**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Criminal Action No. 23-cr-00367-NYW-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     TYSON TUTTLE,

      Defendant.

---

## ORDER

---

This matter is before the Court on Tyson Tuttle's Motion to Suppress Illegally Obtained Evidence (the "Motion to Suppress"), [Doc. 24], and Tyson Tuttle's Motion to Sanction the Government Based on Its Failure to Comply with Its Discovery Obligations (the "Motion for Sanctions"), [Doc. 25].  The Court held an evidentiary hearing and oral argument on the Motions on April 15, 2024.  [Doc. 41].  For the reasons set forth below, the Motion to Suppress and the Motion for Sanctions are respectfully **DENIED**.

## BACKGROUND

On June 22, 2023, Aurora Police Department ("APD") officers were dispatched to a home to respond to a report of domestic violence with weapons.  [Hearing Tr. at 4:7–16].[1]  On scene, officers interviewed witnesses and were told that Defendant Tyson Tuttle ("Defendant" or "Mr. Tuttle") had struck the victim and threatened her with a firearm.

---

[1] The Court cites to a preliminary nonpublic version of the evidentiary hearing transcript. Accordingly, there may be some variations with respect to page numbers, line numbers, or specific language should an official transcript be ordered and prepared.

[Ex. 3 at INV_00000024].[2]  It was reported that Mr. Tuttle had left the scene in a green BMW convertible.  [*Id.* at INV_00000031].  Officers believed that they had probable cause to arrest Mr. Tuttle for assault, menacing, child abuse, and domestic violence.  [*Id.* at INV_00000025].

Additional APD officers were dispatched to the immediate area surrounding the home; on patrol, APD Officer Weston Hall ("Officer Hall") observed a vehicle that matched the description of Mr. Tuttle's car.  [*Id.* at INV_00000031; Hearing Tr. at 5:1–10].  Two men were in the vehicle, one of whom was later confirmed to be Mr. Tuttle.  [Ex. 3 at INV_00000031; Hearing Tr. at 5:22–25, 6:4–6, 8:5–13].  Officer Hall eventually confirmed that the vehicle was registered to Mr. Tuttle.  [Hearing Tr. at 7:23–24].  After the vehicle was parked, Officer Hall saw two men exit the car and walk down an alleyway.  [Ex. 3 at INV_00000038; Hearing Tr. at 10:15–22].  Officers contacted the men and Mr. Tuttle was arrested.  [Ex. 3 at INV_00000038; Hearing Tr. at 11:14–22, 13:2–4].  APD officers later identified the other occupant as Mr. Tuttle's co-Defendant, John Collins ("Mr. Collins")].  *See* [Ex. 3 at INV_00000063–64, 00000069]; *see also* [Doc. 24 at 3 n.2].

Mr. Tuttle did not have any firearms on his person at the time of the arrest.  [Ex. 3 at INV_00000038].  After Mr. Tuttle was arrested, APD officers canvassed the area and searched for the firearm he reportedly had, but they did not locate the gun.  [*Id.* at INV_00000025; Hearing Tr. at 16:17–17:8].  The APD impounded Mr. Tuttle's vehicle.  [Hearing Tr. at 15:14–15].

---

[2] When citing to exhibits, the Court cites to the exhibit number and the Bates number located on the bottom righthand corner of the page, or in the case of video evidence, the timestamp located in the top righthand corner of the frame.

On June 26, 2023, the case was assigned to APD Investigator Everett Williams ("Investigator Williams").   [*Id.* at 35:17–23].   On that day, he reviewed the reporting officers' reports, the body-worn camera ("BWC") footage, and dispatch notes.   [*Id.* at 38:1–16].   He also contacted the victim, who recanted her initial report.   [*Id.* at 38:21–39:2, 39:17–40:2].   Because the victim recanted, Investigator Williams wanted to further develop his investigation, including by locating the firearm, which he "believed [the case] involved."   [*Id.* at 40:18–41:18].   During his investigation, Investigator Williams learned that Mr. Tuttle had transferred ownership in the vehicle to Mr. Collins on June 26, 2023. [Ex. 21 at INV_00000129; Hearing Tr. at 50:25–51:5, 51:12–20].

Investigator Williams applied for a search warrant to search the BMW on July 14, 2023, which was issued the same day.   [Hearing Tr. at 53:17–20].   He executed the search warrant on July 19, recovering a loaded handgun, an AR-15 rifle, and marijuana. [Ex. 3 at INV_00000076–77; Hearing Tr. at 53:21–22].   Mr. Tuttle was subsequently charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession of a firearm in furtherance of a drug trafficking crime, and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession with intent to distribute 50 kilograms or less of marijuana, and aiding and abetting the same, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(D).   [Doc. 12].[3]

Mr. Tuttle now moves to suppress all evidence located during the search of the vehicle.   [Doc. 24].   He argues that (1) the APD's seizure of his vehicle violated his Fourth Amendment rights because it failed to comply with the requirements of the community-

---

[3] Mr. Tuttle was first charged via Criminal Complaint on August 14, 2023.  *See* [Doc. 1]. On August 22, 2023, an Indictment was filed reflecting the same charges.  [Doc. 12].

caretaking exception to the warrant requirement, [*id.* at 6–11]; and (2) the duration of the APD's seizure of the vehicle was unreasonable under the Fourth Amendment, [*id.* at 12–13].  Mr. Tuttle also moves to sanction the Government for alleged discovery violations. [Doc. 25].  The Government opposes both Motions.  [Doc. 28; Doc. 29].

**MOTION TO SUPPRESS**

I.    **Legal Standard**

The Fourth Amendment to the United States Constitution "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. amend. IV).  The touchstone of the Fourth Amendment is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."  *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977).

"For a search or seizure to be reasonable, it must ordinarily be supported by a warrant based on probable cause."  *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021).  A number of exceptions to the warrant requirement exist, including the automobile exception, which permits police to "search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).  But "[e]ven a permissible warrantless seizure . . . must comply with the Fourth Amendment's reasonableness requirement." *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012).  "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'"  *United States v. Jacobsen*, 466

U.S. 109, 124 (1984).  For example, a lawful seizure may become unreasonable "if the police act with unreasonable delay in securing a warrant."  *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (quotation omitted).

The "principal judicial remedy to deter Fourth Amendment violations" is the exclusionary rule, *Utah v. Strieff*, 579 U.S. 232, 237 (2016), which is a court-created doctrine "under which evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure," *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018) (quotation omitted).

## II.   Analysis

Mr. Tuttle argues that the impoundment and search of the BMW violated his Fourth Amendment rights because vehicle impoundments are constitutionally permissible only if they are "justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale," and the impoundment of the BMW satisfies neither requirement.  [Doc. 24 at 6–9 (quoting *United States v. Sanders*, 796 F.3d 1241, 1248 (10th Cir. 2015))].  In the alternative, he contends that it was unreasonable for APD officers to wait 22 days after the vehicle was impounded to apply for a search warrant. [*Id.* at 12–13].  As to the merits of the impoundment, the Government responds that the vehicle was not impounded based on the community-caretaking exception, but was instead properly seized based on probable cause in order to obtain a search warrant, as permitted by *Chambers v. Maroney*, 399 U.S. 42 (1970).  [Doc. 28 at 8–11].  With respect to the search, the Government first contends that Mr. Tuttle lacks standing to contest the search of the car because he transferred title of the car to Mr. Collins on June 26, 2023, before it was searched.  [*Id.* at 11–12].  It also contends that the 22-day period between

the impoundment of the car and Investigator Williams's application for a search warrant was not unreasonable.  [*Id.* at 12–14].

### A.    Standing

Because Mr. Tuttle's standing is a threshold issue, *United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009), the Court addresses that issue first.

"It is well-established that 'the Fourth Amendment is a personal right that must be invoked by an individual.'"  *Id.* (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). Because Fourth Amendment rights are personal, "a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises."  *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001) (quotation omitted).  "The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search."  *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quotation omitted).

The standing inquiry boils down to two questions:  "whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable."  *United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009) (quotation omitted).  In the context of a car search, the defendant must show "that he had a legitimate possessory interest in or a lawful control over the car."  *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (cleaned up).

"While an owner's property interest is certainly to be considered when determining a Fourth Amendment violation, ownership alone is not dispositive."  *United States v.*

*Pena*, No. 1:23-cr-00748-KWR, 2023 WL 8258541, at *3 (D.N.M. Nov. 29, 2023) (quotation omitted).  When the proponent of a motion to suppress is not the registered owner of the car, "the proponent bears the burden of establishing that he gained possession from the owner or someone with authority to grant possession." *Eckhart*, 569 F.3d at 1274 (quotation omitted).  Courts consider the following "important, but not determinative," factors in the standing inquiry:  "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle."  *Id.* at 1274–75 (quotation omitted).

Upon consideration of the relevant factors, the Court concludes that Mr. Tuttle has not met his burden of demonstrating that he has standing to contest the search of the vehicle after he transferred the title of the vehicle to Mr. Collins no later than June 26, 2023.  [Ex. 21 at INV_00000129].  Under Colorado law, "[t]he certificate of title . . . is prima facie evidence . . . that the person in whose name the certificate is registered is the lawful owner of the vehicle."  Colo. Rev. Stat. § 42-6-107(2).  Mr. Tuttle did not make an argument or present evidence to rebut the presumption that as of the title transfer on June 26, 2023, Mr. Collins was the owner of the vehicle.  *See Martinez v. Allstate Ins. Co.*, 961 P.2d 531, 533 (Colo. App. 1997) (observing that the certificate of title creates a rebuttable presumption of ownership).[4]

---

[4] Mr. Tuttle did point out at the hearing that it is not clear to whom the car is registered. [Hearing Tr. at 106:2–7].  However, Mr. Tuttle cannot rely on a lack of clarity or speculation to meet his burden on standing.

Instead, Mr. Tuttle contends that even if Mr. Collins owned the vehicle after June 26, 2023, he maintained a legitimate expectation of privacy in the vehicle. Although Defendant argued at the hearing that transfer of ownership "does not necessarily remove [the former owner's] privacy interest in that car" and "[t]here is nothing to indicate that [Mr. Tuttle] wanted to relinquish any privacy interest he had in the car," [Hearing Tr. at 105:19–106:4], it is *Defendant's burden* to establish his legitimate privacy interest in a car that he did not own, not the Government's burden to show a lack thereof. There was no factual testimony at the hearing about Mr. Tuttle's expectation of privacy or legitimate possessory interest in the vehicle post-title transfer (or otherwise explaining Mr. Tuttle's intentions or expectations upon transferring title to Mr. Collins). Nor was there any other evidence presented showing that Mr. Tuttle maintained a possessory or privacy interest in the vehicle after he transferred title to Mr. Collins, which he did while the car was in APD custody.

Moreover, even if Mr. Tuttle subjectively believed that he retained a privacy interest in the vehicle after he transferred title to Mr. Collins, that belief would not be objectively reasonable. A person's transfer of his ownership interest in a vehicle to another person— especially when that vehicle is not in the owner's possession, but is in the possession of a third party—reasonably suggests an intent to relinquish any privacy or possessory interest in the car. *See United States v. White*, No. 3:06-cr-00003-JTC-AJB, 2007 WL 9724285, at *4 (N.D. Ga. Sept. 20, 2007) (defendant who sold car prior to search of it lacked standing to contest the search because he "no longer had an ownership or possessory interest in the vehicle"), *report and recommendation adopted as modified*, 2008 WL 11444182 (N.D. Ga. Jan. 29, 2008); *cf. United States v. Blaze*, 143 F.3d 585,

591 (10th Cir. 1998) ("It is undisputed [the defendant] surrendered the car to his friends to drive to California.  It is reasonable, therefore, to conclude he abandoned his privacy interest in the car as a whole.  Thus, we hold he has no standing to challenge the search of the car."); *Pena*, 2023 WL 8258541, at *3 (concluding that the defendant "abandoned any privacy interest he had" in his car when he lent his vehicle to another person).

Mr. Tuttle also noted at the hearing that he had previously given Mr. Collins permission to drive the BMW, as it was Mr. Collins who picked up Mr. Tuttle after the domestic violence incident.  [Hearing Tr. at 104:20–105:12].  Even so, this evidence does not establish Mr. Tuttle's continued possessory or privacy interest in the vehicle after he transferred ownership to Mr. Collins.  At bottom, Mr. Tuttle "has presented no evidence that he owned the vehicle, or that he had lawful authorization to use it" at the time of the search.  *United States v. Castro-Cruz*, No. 14-cr-00144-CMA, 2016 WL 11642369, at *4 (D. Colo. Aug. 17, 2016).

That leaves the Court to consider whether Mr. Tuttle presented any evidence to establish a continued ownership interest over the items in the vehicle for the purpose of standing.  *Valdez Hocker*, 333 F.3d at 1209.  At the hearing, Mr. Tuttle argued that he has standing to contest the search because he had property in the car—specifically, a watch and clothes.  [Hearing Tr. at 104:16–19].  But Mr. Tuttle did not adduce or direct the Court to any *evidence* of Mr. Tuttle's ownership interest in any of the items seized from the car, and attorney argument is insufficient to establish Mr. Tuttle's continued interest in the vehicle's contents.  *Cf. Castro-Cruz*, 2016 WL 11642369, at *4 ("Counsel's own assertions in a brief are not 'evidence.'").

The Court acknowledges that this case presents an unusual set of factual circumstances that may not fit neatly into the three-factor analysis described above, as the transfer of title occurred after the seizure but before the search, but Defendant has not argued that any other legal test should apply.  It is Mr. Tuttle's burden to demonstrate standing, and his failure to present any evidence of his continued possessory or privacy interest in the car post-title transfer means that he has not met that burden.  *See United States v. Poghosyan*, No. 6:10-cr-10060-EFM, 2010 WL 4568988, at *8 (D. Kan. Oct. 28, 2010) (concluding that defendants lacked standing to challenge a car search where "none of the defendants ha[d] presented any evidence with regards to any of" the three factors); *United States v. Jenkins*, 743 F. App'x 636, 648 (6th Cir. 2018) ("[The defendant's] failure to present any evidence indicating an expectation of privacy in the [vehicle] means that he has not met his baseline burden to show standing to contest the search.").

For these reasons, the Court concludes that Mr. Tuttle has failed to carry his burden of establishing standing to challenge anything that happened after June 26, 2023—including the continued seizure of the car and the eventual search on July 19, 2023.

**B.    The Impoundment**

Limiting its analysis from June 22, 2023 to June 26, 2023, the Court turns to Defendant's arguments challenging the seizure of the car.  Defendant argues in his Motion to Suppress that the car was improperly seized under an insufficient community-caretaking rationale, [Doc. 24 at 6–9], but he did not press this point at the hearing. Instead, he conceded that if police have probable cause to believe that a vehicle contains evidence of a crime, they can seize the vehicle, [Hearing Tr. at 101:4–11, 103:2–4], and

he focused his challenge on the length of the seizure of the BMW, asserting that it was too long and thus unreasonable, *see, e.g.*, [*id.* at 103:7–14, 106:12–109:24].

Given Defendant's original argument challenging the constitutionality of the seizure, coupled with his concession at the hearing that if police had probable cause, the seizure was proper, the Court will briefly address the issue of probable cause.[5]  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).  "A 'fair probability' is not an airtight guarantee; nor is it 'proof that something is more likely true

---

[5] In the Motion to Suppress, Defendant hinted at, but did not make, a developed argument that police lacked probable cause to seize the car.  *See generally* [Doc. 24]; *but see, e.g.*, [*id.* at 10 ("[T]he APD explicitly used its impoundment as a pretext to search for evidence of a crime.  The APD did not believe they had probable cause to search Mr. Tuttle's car legally parked on the street but wanted it just in case.")].  And at the hearing, Defendant did not expressly argue a lack of probable cause, either:

> The Court:  . . . Does the Defendant here argue that there was not probable cause by the Aurora Police Department to seize the vehicle because they believe there was a gun in it?

> Defense counsel:  I think the evidence points to the idea, I see the Court's point, but I think the evidence goes to the point that I don't think any of the law enforcement officers that were on scene believed there was probable cause to search.  As the Court knows, they are not required to get a search warrant.  They can search the car if they believed there was a gun in the car.

> The Court:  So are you saying I can't find that there was probable cause to seize the car unless the officers on scene believed there was probable cause to search the car?

> Defense counsel:  No, ma'am, that is not what I am -- I would concede that the construct of probable cause in my mind is 50/50.  I don't believe because Mr. Tuttle was arrested almost a mile away from where the car was sitting, I . . . don't know what the nexus would necessarily be.

[Hearing Tr. at 101:18–102:13].  While the Government asserts in its Response that Mr. Tuttle "does not challenge probable cause" to search the vehicle, [Doc. 28 at 9], and the Court recognizes that "arguments that are inadequately presented in an opening brief" are "abandoned or waived," *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) (quotations omitted), the Court elects to address probable cause to search the vehicle.

than false.'"  *United States v. Jenkins*, 819 F. App'x 651, 658 (10th Cir. 2020) (quoting *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)).  It is instead "somewhere between a naked suspicion and a preponderance of the evidence."  *Id.*

"When . . . the police have probable cause to believe a vehicle contains contraband or evidence of criminal activity, the police may seize it without a warrant and hold it for whatever period is necessary to obtain a warrant for the search."  *United States v. Shelton*, 817 F. App'x 629, 634 (10th Cir. 2020) (quotation omitted); *see also Chambers*, 399 U.S. at 51 (where probable cause exists, "if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search").

In this case, APD officers received reports that Mr. Tuttle was armed and threatened to shoot his former partner.  [Ex. 3 at INV_00000024, INV_00000027].  Police observed Mr. Tuttle as the passenger in the green BMW and learned that he was the registered owner of the car.  [Hearing Tr. at 7:23–24, 8:5–20, 9:5–10].  When Mr. Tuttle was arrested, police did not find a firearm on his person.  [Ex. 3 at INV_00000025].  Police also searched the alleyway where Mr. Tuttle had been observed walking and did not find the gun.  [*Id.* at INV_00000038; Hearing Tr. at 16:17–17:8].  Based on these circumstances, the Court concludes that there was probable cause to believe that the gun would be found in the BMW.  *See United States v. Scalf*, 708 F.2d 1540, 1546 (10th Cir. 1983) ("[W]ithin forty-five minutes after an armed bank robbery, appellant was apprehended while travelling in a car that matched the description of the getaway car. The occupants of the car possessed currency taken from the bank, but no gun was found.

These facts alone were sufficient to establish probable cause to believe that the gun used in the robbery could be found in the car."); *United States v. Brook*, 806 F. App'x 649, 652–53 (10th Cir. 2020) (police had probable cause to search a U-Haul where they knew that the defendant had stolen guns, knew that the defendant had been driving and been a passenger in the U-Haul, and did not find the guns in an apartment visited by the defendant or on his person).   Police could thus permissibly seize the BMW under *Chambers*, 399 U.S. at 51.[6]

What Defendant challenges is the length of the seizure.   *See* [Doc. 24 at 12–13; Hearing Tr. at 103:7–17].   Defendant argued at the hearing that even a four-day delay in searching the car was unreasonable because obtaining a search warrant is an uncomplicated process that could have been completed sooner, [Hearing Tr. at 103:15–104:12], and because the car could have been searched without a warrant, [*id.* at 104:13].   He also asserted that the APD's internal Directives Manual contemplates a 72-hour time limit for storing vehicles to be searched, which he contends "should be the baseline for how long the car should be held."   [*Id.* at 104:13–16].   The Government contends that the length of the seizure was reasonable because Investigator Williams acted diligently in his investigation from the first day he was assigned the case.   [*Id.* at 117:23–118:22].

"[A] seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration or for other reasons."   *Segura v. United States*, 468 U.S. 796, 812 (1984).   "There is unfortunately no bright line past which

---

[6] Having reached this conclusion, the Court need not address Defendant's arguments about the community-caretaking exception.

a delay becomes unreasonable." *Burgard*, 675 F.3d at 1033. The reasonableness of a seizure "turns on the facts and circumstances of each case viewed in the light of established Fourth Amendment principles." *United States v. Shrum*, 908 F.3d 1219, 1230 (10th Cir. 2018).

The relevant circumstances of the challenged search are as follows: Investigator Williams testified that, in June 2023, the APD was understaffed by about 200 police officers, [Hearing Tr. at 33:9–10, 67:7–12], and he had between 22 and 28 active investigations, [*id.* at 34:25–35:3]. Mr. Tuttle's car was impounded by the APD, based on probable cause, on the evening of Thursday, June 22, 2023. [Ex. 19 at INV_00000131;[7] *see also* [Ex. 14 at 19:26:09 (video showing the car being placed on a tow truck at approximately 7:30 p.m.)]. The case was assigned to Investigator Williams on Monday, June 26, 2023—the last day of the relevant timeframe that Mr. Tuttle has standing to contest. [Hearing Tr. at 35:17–20]. On that day, Investigator Williams reviewed the case report, including all of the reporting officers' reports, BWC footage, and dispatch notes. [Ex. 3 at INV_00000054–57; Hearing Tr. at 38:1–16]. He also contacted the victim, at which time she "recanted her story and told [Investigator Williams] that she did not want to cooperate in the investigation or any further proceedings." [Ex. 3 at INV_00000056; Hearing Tr. at 38:17–24]. He did not apply for a search warrant that day. *See, e.g.*, [Ex. 3 at INV_00000088]. Investigator Williams testified at the hearing that, based on his experience, the victim's recantation made him believe that the case would need to

---

[7] The Court can and does take judicial notice of the 2023 calendar and the days of the week on which certain dates fall. *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1167 n.1 (10th Cir. 2000); *Lee v. Delta Air Lines Inc.*, No. 2:20-cv-08754-CBM-JEM, 2021 WL 4497209, at *3 (C.D. Cal. Aug. 23, 2021).

proceed without her testimony, which required him to investigate further.  [Hearing Tr. at 39:5–6, 39:17–40:2, 40:18–24, 73:11–15].

The Court cannot conclude that the period between June 22, 2023, when the car was impounded, and June 26, 2023, when Investigator Williams was assigned the case but did not immediately apply for a search warrant, constitutes an unreasonable delay rendering the four-day seizure unconstitutional under the Fourth Amendment.  First, although the case was not assigned to an investigator for four days, the Court finds it at least somewhat relevant that that period included a weekend, which may have contributed to any delay in the assignment.  *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (considering the fact that eleven-day delay in procuring warrant "included two weekends and the Christmas holiday" in assessing reasonableness of delay).  When he received the assignment, Investigator Williams promptly initiated his investigation by reviewing the case file materials and contacting the victim.  Based on that conversation, Investigator Williams believed, based on his experience, that he needed to investigate further before applying for a search warrant.  It was thus not unreasonable under the circumstances for Investigator Williams to not apply for a search warrant on June 26, 2023.  *See Burgard*, 675 F.3d at 1033 (considering whether police diligently pursued their investigation in reasonableness analysis); *United States v. Chang*, No. 1:18-cr-00681-NGG, 2024 WL 1308775, at *9 (E.D.N.Y. Mar. 27, 2024) (ongoing investigation provided a reasonable justification for delay in obtaining a search warrant).

Mr. Tuttle nevertheless contends that the four-day period rendered the seizure unreasonable because it exceeded the 72-hour investigatory hold contemplated in the

APD's Directives Manual,[8] which he argues "should be the baseline for how long the car should be held."  [Doc. 24 at 8–9; Hearing Tr. at 104:11–16].  However, the Directives Manual sets out internal policies, not constitutional parameters, and "[t]he ultimate touchstone of the Fourth Amendment is reasonableness, not perfection."  *United States v. Burton*, 756 F. App'x 295, 300 (4th Cir. 2018) (quotation omitted); *cf. United States v. Todd*, No. 4:16-cr-00305-LGW-GRS, 2017 WL 1197849, at *11 (S.D. Ga. Feb. 10, 2017) ("[T]he violation of parole department guidelines or policies does not rise to the level of a constitutional violation requiring suppression of evidence."), *report and recommendation adopted*, 2017 WL 1172113 (S.D. Ga. Mar. 29, 2017).

---

[8] The Directives Manual states:

> The storage of vehicles as evidence or for additional investigation can be done in two ways:
>
> (a)  In Storage bays identified by a number on the doors, which will be used when:
>
> > (i)  Obtaining a search warrant.
> >
> > (ii)  Fingerprinting or photo processing needs to be conducted.
> >
> > (iii)  The chain-of-custody would require securing the vehicle as evidence for felony crimes such as homicide, rape, and robbery.
> >
> > (iv)  Any other vehicles requiring maximum security and with approval of a supervisor.
>
> (b)  In storage adjacent to the storage bays when the additional investigation can be completed within 72 hours.
>
> (c)  Alternative arrangements made by the Property Custodian when no bay is available.
>
> The case investigator will ensure that vehicles are removed within the 72-hour time limit.  Approval must be obtained from their Command Officer for extension of this time limit.

[Ex. 4 at 6–7].

In sum, the limited four-day delay in procuring a search warrant was not unreasonable and does not amount to a violation of Mr. Tuttle's Fourth Amendment rights. Accordingly, the Motion to Suppress is respectfully **DENIED**.

## MOTION FOR SANCTIONS

The APD reports from the underlying incident identify witnesses using only the witness's initials, redacting the remainder of the witness's name. *See, e.g.*, [Ex. 3 at INV_00000024]. During the preparation of the defense of this case, Defendant propounded three discovery requests on the Government, seeking (1) unredacted copies of the investigative reports "providing the full names, addresses, and dates of birth for each of the identified witnesses"; (2) all BWC footage from the initial response and Mr. Tuttle's arrest; and (3) any Facebook messages related to the incident that Investigator Williams had in his possession on December 26, 2023. [Doc. 25 at 3–4].[9] Defendant represents that the Government subsequently produced twelve BWC videos and one Facebook message, [*id.* at 5–6],[10] but that the Government has not provided unredacted copies of the investigative reports, [*id.* at 6].

Mr. Tuttle argues that, based on the Government's failure to produce materials within its possession that are material to preparing his defense, the Court should sanction the Government by either dismissing the Indictment or by prohibiting the Government from introducing the undisclosed evidence at trial. [*Id.* at 1]. He asserts that the identity

---

[9] Defendant also requested a copy of the search warrant and accompanying affidavit for the search of the BMW, but later informed the Government that he no longer needed a copy. [Doc. 25 at 4 & n.2].

[10] The Motion for Sanctions raises substantive arguments only with respect to the unredacted investigative reports. *See* [Doc. 25 at 8–9]. Accordingly, the Court understands the request for sanctions to be based only on the Government's failure to provide the unredacted reports.

of the witnesses is material because the Government is sure to call the witnesses at trial. [*Id.* at 8].  And at the hearing, he further argued that the identity of one particular witness, identified in the reports as "K.R." is material to his defense because she spoke with Investigator Williams about Mr. Collins and told him that Mr. Collins "was upset that the Police took his car" and were "messing up his money."  [Ex. 3 at INV_00000070; Hearing Tr. at 124:10–23].  Mr. Tuttle argues that Mr. Collins's alleged statement may show that the marijuana found in the BMW belonged to Mr. Collins, not Mr. Tuttle, so K.R. may have exculpatory evidence.  [Hearing Tr. at 124:18–23, 125:14–126:8, 129:2–9].  Defendant contends that, without knowledge of the witnesses' identities, he is unable to interview those witnesses prior to trial to "confirm the statements they allegedly made to law enforcement or discover if there is additional evidence that will be material to [his] defense."  [Doc. 25 at 9].

The Government responds that Mr. Tuttle is not entitled to witness information prior to trial and that it has no obligation to provide any identifying information to Mr. Tuttle. [Doc. 29 at 3–5].  In addition, the Government asserts that Defendant "is in fact in possession of the identities and contact information of witnesses" because the witnesses were identified in Investigator Williams's recorded phone calls and the BWC videos.  [*Id.* at 5].  At the hearing, defense counsel explained that he still does not have enough information to ascertain the identity of K.R. because although there is one known witness whose name begins with the letter K, "she has a twin that also has a name that begins with K" and "they are both connected to this family," such that he cannot conclusively identify K.R.  [Hearing Tr. at 128:4–19].

The Court need not and does not delve into the Parties' dispute about whether Mr. Tuttle does or does not know the identity of the witnesses in this case because the Government has no obligation to provide Mr. Tuttle the identity of witnesses prior to trial. In his Motion, Mr. Tuttle relies on Rule 16 of the Federal Rules of Criminal Procedure, which provides that

> the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:  (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  If a party fails to comply with this rule, a court may order the production of discovery, grant a continuance, prohibit that party from introducing the undisclosed evidence at trial, or enter any other just order.  Fed. R. Crim. P. 16(d)(2).

However, "[i]t is settled law in this circuit that, in the absence of a statutory or constitutional requirement," there is no "requirement that the government disclose its witnesses in any manner, except in a case where trial is for treason or other capital offense."  *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (quotation omitted). While Rule 16 "provides limited discovery obligations on behalf of prosecutors," it "does not entitle defendants to discover the identity of government non-expert witnesses before trial."  *Id.*; *see also United States v. Tarango*, 760 F. Supp. 2d 1163, 1165–66 (D.N.M. 2009) ("Rule 16 . . . does not require disclosure of witness lists.  Indeed, the rule is silent regarding witness lists.").   Accordingly, Rule 16 does not, on its face, obligate the Government to provide the names of witnesses to Defendant.

Mr. Tuttle argued at the hearing, however, that he is entitled to know K.R.'s identity because K.R. "can provide" *Brady* material.[11]   [Hearing Tr. at 129:2–9].   Based on the Court's understanding, Mr. Tuttle is not affirmatively arguing that the Government has committed a *Brady* violation, but he instead suggests that the caselaw the Government relies upon is not applicable because those cases did not address disclosure of witness identities when those witnesses might have *Brady* material.   *See, e.g.*, [*id.* at 124:6–8 ("Your Honor, the Government's cases, the cases they cited deal with just getting some -- being able to get names for this *Giglio* material."); *id.* at 129:2–6 ("[L]ooking at the case law, all of that case law deals with information that is not *Brady* material, that is not potentially exculpatory information.  It deals with just trying to find *Giglio* information about these people investigating the witness.")].[12]   Indeed, he did not make any *Brady* argument in his Motion for Sanctions, instead relying exclusively on Rule 16.   *See* [Doc. 25].[13]

While some courts have held that "[t]he mere identity of witnesses is not exculpatory and is not covered by *Brady*," *United States v. Boyce*, 564 F.3d 911, 918 (8th Cir. 2009); *see also Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 260 (11th Cir. 2013), courts have also recognized an obligation to turn over witness identities *if* those witnesses possess exculpatory *Brady* information.   *See, e.g.*, *United States v. Aiken*, 76

---

[11] "*Brady* material" refers to the Supreme Court's decision in *Brady v. Maryland*, which held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[12] *Giglio v. United States*, 405 U.S. 150 (1972), "holds that exculpatory evidence includes evidence affecting witness credibility if the witness's reliability will likely determine guilt or innocence."   *United States v. Garrison*, 147 F. Supp. 3d 1173, 1178 (D. Colo. 2015).

[13] Any such argument was not raised in the Motion for Sanctions and is thus waived.  *See* [Doc. 25]; *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991).

F. Supp. 2d 1339, 1343 (S.D. Fla. 1999) ("[T]here is no authority requiring the Government to supply witness lists or witness statements until that witness has testified on direct examination, *unless* such information is required sooner by *Brady* or *Giglio*." (emphasis added)); *United States v. West*, 790 F. Supp. 2d 673, 678 (N.D. Ill. 2011) ("The fact that defendants have asked the government to identify persons and not simply to provide potentially exculpatory information does not render their request improper or otherwise outside the bounds of *Brady* and its progeny."); *cf. United States v. Poindexter*, 727 F. Supp. 1470, 1485 (D.D.C. 1989) ("The *Brady* obligations are not modified merely because they happen to arise in the context of witness statements.").

The Government has an obligation to determine whether disclosure is required under *Brady*, and the Court "should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1256 (D.N.M. 2008) (citing *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988); *United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996)). "Mere speculation that the files may contain favorable evidence to the defense is insufficient to compel the government to make its files available for review." *Id.* Nevertheless, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs*, 427 U.S. 97, 108 (1976).

At this time, the Court cannot conclude that sanctions are warranted. First, because Defendant did not argue that witness identities must be disclosed under *Brady* in his Motion for Sanctions, and because the argument was not developed at length at the hearing, the Court is without any responsive argument from the Government on this

issue.  *See* [Doc. 25; Doc. 29]; *see also* [Hearing Tr. at 124:6–129:9].   Second, the Government has been ordered to turn over all *Brady* material.  [Doc. 16 at 10].  Assuming that K.R. does have *Brady* material and assuming, without deciding, that the Government's failure to disclose her identity violates the Discovery Order, Mr. Tuttle does not explain why dismissing the Indictment or precluding the Government from offering evidence is more appropriate than ordering the Government to simply disclose K.R.'s identity, since the Court must "impose the least severe sanction that will accomplish prompt and full compliance with the discovery order."  *United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009) (quotation omitted).[14]  Accordingly, the Motion for Sanctions is respectfully **DENIED** without prejudice.  The Government is reminded of its obligations under *Brady* to turn over exculpatory information and is **DIRECTED** to consider whether K.R.'s identity must be disclosed under *Brady*.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1)     Tyson Tuttle's Motion to Suppress Illegally Obtained Evidence [Doc. 24] is **DENIED**;

(2)     Tyson Tuttle's Motion to Sanction the Government Based on Its Failure to Comply with Its Discovery Obligations [Doc. 25] is **DENIED**; and

(3)     On or before **May 8, 2024**, the Parties shall meet and confer with respect to the requirements of the Speedy Trial Act and shall file a joint status report

---

[14] And practically, given Defendant's representation that K.R. is one of two individuals known to him, it is unclear why Defendant could not simply seek information from both individuals.

setting forth their position(s) as to the applicable Speedy Trial Act date, for

purposes of resetting the trial.


DATED:  May 1, 2024                                  BY THE COURT:

                                                     _____
                                                     Nina Y. Wang
                                                     United States District Judge